**CERTIFICATE OF SERVICE**
I certify that a copy of the foregoing document to which this certificate is attached was served on the attorney(s) of record for defendant(s) via telefax/ mail/personal delivery on the _22nd_ day of _____ May _____ ,20 _03_

**UNITED STATES ATTORNEY**
by _Christina DeChenne_

Chief Judge Coughenour

CC TO JUDGE __DJ__

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

MAY 2 2 2003   DJ

AT SEATTLE
CLERK U S DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR03-011C |
| Plaintiff, | |
| v. | GOVERNMENT'S SENTENCING MEMORANDUM |
| TOBECHI ENYINNAYA ONWUHARA, | |
| Defendant. | |

CR 03 00011 #00000039

## I.   Introduction

The United States hereby files its Sentencing Memorandum in this case. The United States recommends that the Court sentence defendant in the middle of his applicable guideline range of 18 to 24 months, followed by three years of supervised release.

## II.   Factual Background

The United States agrees with the factual statement set forth in the Presentence Report.

As described, on December 12, 2002, defendant Onwuhara attempted to use an unauthorized Discover card and counterfeit Texas driver's license to obtain a $5,000 cash advance at the Washington Mutual Bank in Lynwood, Washington. Following the defendant's arrest, Special Agents with the United States Secret Service discovered that the defendant had made other miscellaneous charges to the unauthorized credit cards in the his possession in the States of Washington and Oregon.



GOVERNMENT'S SENTENCING MEMORANDUM/
ONWUHARA - 1
(CR03-011C)

1    Special Agents also learned about three pending cases against the defendant for

2    unauthorized credit card use in the State of Texas. The first Texas case arose on April

3    16, 2002, in Denton County, Texas, when the defendant was arrested by Lewisville

4    Police for using unauthorized credit cards and counterfeit Texas driver's licenses in the

5    names of David Smith, Paul Brophy, Riyad Hossainy, John D Smith, and Kevin G.

6    Olson. The total actual and attempted loss figure associated with the use of credit cards

7    in Denton County is $70,460.43

8    The defendant subsequently was arrested on July 19, 2002, by the Arlington Police

9    in Tarrant County, Texas, when he attempted to use an unauthorized credit card in the

10   name of Allan Wirth at a CompUSA store. This resulted in an attempted loss figure of

11   $2,091.33.

12   Finally, on August 5, 2002, the defendant was arrested by Coppell Police in

13   Dallas County, Texas, when he attempted to claim two unauthorized credit cards sent for

14   pick up at the Airborne Express Office in Coppell, Texas.  The credit cards were

15   provided to Onwuhara in a controlled delivery, and therefore there is no actual loss

16   associated with these unauthorized credit cards.

17   Total losses and attempted losses from the three Texas cases and the case arising in

18   the Pacific Northwest have been incorporated into the current total loss/attempted loss

19   figure of $86, 447.21.  County Prosecutors from Denton, Tarrant, and Dallas Counties

20   have agreed to dismiss their pending cases against the defendant if losses from their

21   cases are taken into consideration in the instant case.

22   **III.   Guideline Calculations**

23   The United States agrees with the United States Sentencing Guidelines (U.S.S.G.)

24   calculations set forth in the Presentence Report.

25           **A.   Use of Means of Identification to Produce Other
     Means of Identification**

26

27   Contrary to defense counsel's suggestion, the two- point enhancement under

     U.S.S.G. § 2B1.1(b)(9)(C)(i) is applicable to defendant Onwuhara in this case.

28

1    Section 2B1.1(b)(9)(C)(i) applies when the offense involves the unauthorized

2    transfer or use of *any means of identification* to produce any other means of

3    identification.  Under Application Note 7 to U.S.S.G. § 2B1.1, for the purposes of this

4    guideline provision, "means of identification" is defined in 18 U.S.C. §1028(d)(4).

5    Section 1029(d)(4)(A), in turns, defines "means of identification" to include any name,

6    number, social security number, or date of birth that could be used alone or in

7    conjunction with other information to identify a specific person.

8        Here, ONWUHARA received by email from his associates a list of credit card

9    holders' names, addresses, telephone numbers, date of birth, and social security

10   numbers, from which *ONWUHARA* selected the credit card holders in whose name

11   unauthorized credit cards and counterfeit driver's licenses would be produced.  This is

12   confirmed by ONWUHARA's own statement to police following his arrest, and the list

13   of credit card holders' identification information seized from him at the time of his

14   arrest. Thus, when ONWUHARA obtained this information about credit card holders,

15   and then used that information to select the credit card holders in whose names

16   unauthorized credit cards and counterfeit driver's licenses would be produced by his

17   associates, he thereby used a "means of identification" to produce another means of

18   identification

19              **B.    Reckless Endangerment During Flight**

20       Defendant Onwuhara mistakenly objects to the two-point enhancement for reckless

21   endangerment during flight under U.S.S.G. § 3C1.2.

22       Section 3C1.2 of the Sentencing Guidelines provides that the District Court may

23   adjust a defendant's sentence upward two levels "[i]f the defendant recklessly created a

24   substantial risk of death or serious bodily injury to another person in the course of fleeing

25   from a law enforcement officer. . "  U.S.S.G.  3C1.2.  Under this section, a defendant is

26   expressly made responsible "for his own conduct and for conduct that he aided or abetted,

27   counseled, commanded, induced, procured, or willfully caused." U.S.S.G. 3C1.2,

28   Application Note 5.

GOVERNMENT'S SENTENCING MEMORANDUM/
ONWUHARA - 3
(CR03-011C)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

1  Attached to this Sentencing Memorandum as Exhibit A is a true and correct copy

2  of a Lynnwood Police Department report authored by Sgt. Mark Demetruk, Badge No.

3  412. As shown in this report, on December 12, 2002, to avoid capture for

4  ONWUHARA'S attempted use of the unauthorized credit card at the Washington Mutual

5  Bank, defendants NNABUE (driver) ONWUHARA (passenger) left the Washington

6  Mutual Bank in a rented Plymouth Neon and drove with extreme recklessness, placing

7  themselves, the police, and the public at extreme risk, while being pursued by uniformed

8  police officers in three police cars with emergency lights and sirens  The chase occurred

9  in the middle of the business day between 11:30 a.m. and noon in Lynnwood, on wet

10  roadways, during the height of the Christmas shopping season. Defendants first began by

11  evading a uniformed police office and a marked police car that had parked off the right

12  rear quarter panel of the Neon.  Ignoring the police emergency lights and later police

13  sirens, the Neon took evasive measures to avoid police cars, striking sidewalk curbs at

14  least two times during the pursuit.  In the ensuing police chase, defendants ran at least six

15  stop signs, and reached speeds up to 70 miles per hour in 30 miles per hour zones.

16  During the chase, both defendants threw evidence from the window of the car.  When

17  police finally forced the Neon into a church parking lot, the  NNABUE surrendered as he

18  stepped out of the driver's seat, but ONWUHARA fled on foot through the residential

19  neighborhood.  Police were forced to call in a canine unit and set up a containment area to

20  locate ONWUHARA, who eventually was located and arrested  through a report from a

21  homeowner.

22  Such a high speed car chase is precisely the kind of behavior that warrants an

23  enhancement for reckless endangerment during flight. See United States v. Luna, 21 F.3d

24  874, 885 (9th Cir.1994)(enhancement applied where robbers ran three stop signs, refused

25  police attempts to pull over the car, and then abandoned the running car, fleeing on foot),

26  United States v. Hernandez-Rodriguez, 975 F.2d 622, 626 (9th Cir.1992)( "[under]

27  section 3C1.2 . . . the offense level could be increased for a high- speed chase. . . ").

28

GOVERNMENT'S SENTENCING MEMORANDUM/
ONWUHARA - 4
(CR03-011C)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

1  Defendant ONWUHARA objects, however, that he was merely the passenger and

2  therefore should not receive this enhancement.   Whether ONWUHARA "aided or

3  abetted, counseled, commanded, induced, procured, or willfully caused" such conduct,

4  however, may be inferred from the circumstances of the getaway, including "conduct

5  occurring before, during, or after the high-speed chase." United States v. Young, 33 F.3d

6  31, 33 (9th Cir. 1994).   Thus, in United States v. Luna, the Court held that the passenger,

7  Torres, aided and abetted the abandonment of the running car in a residential area

8  following the police chase, which was enough to constitute evidence of such aiding and

9  abetting behavior.  21 F.3d at 885  See also United States v. Conley, 131 F.3d 1387,

10  1390-91 (10th Cir.1997) (enhancement applied to passengers in getaway car that engaged

11  in high-speed chase following bank robbery, given evidence that passengers planned the

12  armed robbery, were armed, and required a quick getaway), cert. denied, 523 U.S. 1087

13  (1998).

14  Here, the evidence demonstrates that ONWUHARA clearly procured, aided and

15  abetted, and encouraged the conduct constituting reckless endangerment.  ONWUHARA

16  left the bank after the failed fraudulent transaction, and was immediately driven away in

17  the reckless manner described above.  During the chase, while NNABUE was driving the

18  Plymouth Neon recklessly at a high rate of speed, ONWUHARA threw items of evidence

19  from the car.  This conduct itself would naturally cause other drivers on the road to

20  swerve to avoid the unknown items being discarded, and therefore itself constituted

21  reckless behavior.  At no time was there any suggestion that ONWUHARA attempted to

22  persuade NNABUE to pull over in response to the police chase.  Moreover, when the

23  Plymouth Neon finally was stopped by police, ONWUHARA fled on foot, requiring that

24  police use a canine unit and a containment area to locate him.  Everything that Onwuhara

25  did -- from the moment he entered that car until he was captured -- is consistent with an

26  intent to induce and encourage NNABUE to drive the car recklessly.  Therefore, this

27  enhancement applies.

28

GOVERNMENT'S SENTENCING MEMORANDUM/
ONWUHARA - 5
(CR03-011C)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

**IV.    Recommendation**

The United States recommends a sentence in the middle of the defendant's guideline range of 18 to 24 months.

The Government acknowledges that there is support for a low-end recommendation made by the United States Probation Office in this case.  Defendant made admissions to investigators shortly after he was arrested, and he agreed to plead guilty relatively early after the case was filed.

On the other hand, the defendant engaged in unlawful conduct in the State of Washington after being arrested three times for similar behavior in Texas in the just the previous eight months.  Additionally, the defendant is receiving a substantial benefit through dismissals of all three Texas cases in return for his guilty plea in the instant case.

Taking all of these facts into consideration, the United States believes that a sentence in the middle of the applicable guideline range is appropriate.

DATED this _22nd_ day of _May_____, 2003.

Respectfully submitted,

JOHN McKAY
United States Attorney

LAWRENCE LINCOLN
Assistant United States Attorney

GOVERNMENT'S SENTENCING MEMORANDUM/
ONWUHARA - 6
(CR03-011C)

# EXHIBIT A

EXHIBIT A



### *Lynnwood Police Department*
### *Case #02-10071*

On December 12, 2002 at 1129 hours Lynnwood patrol units responded to a fraud in progress at the Washington Mutual bank located just inside the west doors of the Lynnwood Fred Meyers store (4615 196th St. SW). An update was given by dispatch that the suspect was leaving the store via the west doors. I was at the Lynnwood Police Dept. and responded to the call because of my close proximity. As I advised radio that I was responding Off. Jamison reported that he was in the Fred Meyers lot with an employee and began to give updates concerning the location of the suspect. Off. Jamison reported that the suspect(s) were still in the Fred Meyer west parking lot about to exit out onto 48th Ave. W. in a gold color vehicle. Off. Miller reported being with the vehicle as I arrived on scene. I observed Off. Jamison in full police uniform walking toward the suspect vehicle a gold Plymouth Neon with Oregon plates. Off. Miller parked his fully marked police vehicle off the right rear quarter panel of the suspect vehicle in order to contact the individuals inside. The gold vehicle started to drive off N/B through the parking lot. Off. Miller parallelled the vehicle and then turned E/B. As he did the suspect vehicle turned W/B and drove by Off. Miller ignoring his emergency vehicle lights that were on.

I was following the vehicle in my semi marked police vehicle and had my vehicles' emergency lights activated. I advised dispatch that I was in pursuit as the vehicle exited onto 48th Ave. W. N/B from the parking lots west driveway. Off. Miller had repositioned his vehicle, cantered on 48th Ave. W. at 194th St. SW with his vehicles emergency lights still on. The supect vehicle accellerated and swerved hard right to go around the stopped patrol vehicle. As it did the suspect's vehicle right front wheel struck the curb damaging the rim cover. The suspect vehicle continued N/B on 48th Ave. W. failing to stop for the stop sign at 194th St. SW. The suspect vehicle attempted to make a left turn onto 192nd St. SW and ran onto the N/W curb. The suspect vehicle manuevered off the curb and I followed it W/B on 192nd St. SW to 52nd Ave. W. at speeds up to 40 mph in a 25 mph zone. Again failing to stop for the stop sign at 52nd Ave. W. and 192nd St. SW. I had activated all emergency equipment by this time including the siren on my vehicle.

As the vehicle turned N/B onto 52nd Ave. W. Off. DeGabriele in a fully marked patrol vehicle with lights and siren joined in on the pursuit. It had just stopped raining and the roads were wet, traffic was light and had stopped upon hearing the police sirens. The suspect vehicle failed to stop for the stop sign N/B on 52nd Ave. W at 188th St. SW. The suspect vehicle increased its speed to 70 mph in a 30 mph zone. There was only one other car in front of the supect vehicle in the 18400 block. The suspect vehicle slowed down and then passed on that vehicles right side. The suspect vehicle slowed again as it approached Hwy 99 and as it turned onto Hwy 99 it failed to stop for the stop sign before entering the Hwy.

I would classify the traffic flow on Hwy 99 as medium being somewhat heavier than the other surface roads. The suspect vehicle turned E/B onto 180th St. SW and

**Sgt. Mark Demetruk #412**

# EXH. A




### *Lynnwood Police Department*
### Case # 02-10071

accellerated to 60 mph in a 30 mph zone, again there was no traffic on 180th St. SW. As the suspect vehicle approached 44th Ave. W. it slowed down and ran the stop sign as it turned S/B onto 44th Ave. W. As I reached 44th Ave. W. no other vehilces were present except those stopped on 44th Ave. W. at Maple Road due to Officer Brinkman positioning of his vehicle with emergency equipment activated.

The supect vehicle turned E/B onto Maple Road by turning into the W/B lane and then moving over to the E/B lane. As the suspect vehicle continued E/B, just after 42nd Ave. W. I observed the passenger throw items (assorted papers) out of the passengers window striking the 20 mph speed sign. The suspect vehicle continued E/B traveling 40 mph in a 25 mph zone. As the suspect vehicle reached 36th Ave. W. it failed to stop for the stop sign and turned left onto 36th Ave. W. N/B. There was heavy construction in the area and the supect vehicle turned W/B into the Korean Emmanuel Church located at 17730n 36th Ave. W. The supect vehicle drove to the rear of the church and was forced to stop. The driver exited the vehicle and gave himself up immedidately the passenger fled on foot. Containment was set up and K9-5 was requested. The suspect was located in a water retention pond off Maple Road by containment officers. Lynnwood Officer Langdon recovered the paperwork that was tossed out of the vehicle by the passenger.

As I placed the suspected driver into custody he placed a wallet on the back of the gold vehicle. He stated that he wanted the wallet because it was his. I removed a large amount of cash (MAD001) from his right front pants pocket. He also claimed the money to be his. I identified him from a Washington State drivers' license as Abel Unabue 12-17-74. I then verbally advised him of his constitutional rights from memory. The suspect acknowledged his understanding of his constitutional rights and then agreed to talk to me without presence of consul.

Nnabue stated that he just drove a friend to Fred Meyers. He said he went into the store to buy some cigarettes and his friend wanted to get some bump removal for his hair since he just got it cut. Nnabue said he bought his cigarettes and went out to his vehicle that he rented from Thrifty on Pacific Hwy South. Nnabue said he does not know what his friend was doing. Nnabue when asked did not know what his friends name was or where he lived. Nnabue said his friend then came out to the car. After entering the car he saw the police officer coming toward him with his gun drawn, fearing that he was going to be killed he drove away, failing to stop for all police vehicles for that same fear.

I ran a full check on the Plymouth Neon bearing Or. license plates # YYS641. The vehicle returned clear and current to a rental car agency. Nnabue reiterated several times that he rented the vehicle from Thrifty rent a car. Nnabue asked what was going to happen to the vehicle since it needed to be back tonight or they would charge him for

**Sgt. Demetruk #412**



### Lynnwood Police Department
### Case # 02-10071



another day. I told him that I was going to impound the vehicle and petition the court for a search warrant. Nnabue stated in the presence of Officer DeGabriele that he would give me permission to search the vehicle and that I do not need to get a search warrant. I then asked Nnabue "you do not care if I search your car", Nnabue stated "no, go ahead". I then conducted a search of the suspect vehicle removing the following items. From the drivers side front floor board a Samsung cellular telephone (MAD002). From the passenger side floor board two Nokia cellular telephones and assorted recharging plugs (MAD003). I also removed several computer e-mail print out pages from the floorboard (MAD004). From the rear seat I removed a blue gym bag containing assorted clothes and electronic items (MAD005). The rear seat had a pass through with access to the trunk. From the trunk area I removed a white Nordstrom's bag containing men's shirts and ties (MAD006) and a black gym bag containing more clothes, jewelry boxes and telephones (MAD007). I removed a Thrifty and Dollar car rental agreements (MAD010) from the passenger door sleeve. As I was walking back to my patrol vehicle I noticed another computer print out page similar to the ones located in the front of the suspect vehicle. A closer check showed it to be part of the same e-mail printout located in the suspect vehicle. I collected the page (MAD008) containing people's names, addresses, dates of births and social security numbers.

I transported Nnabue to the Lynnwood jail as Off. DeGabriele remained with the vehicle until the tow truck arrived. At the Lynnwood jail a closer look at Nnabue's wallet showed he had a Washington State identification card. The last name on the I.D. card was spelled "Nnabue" instead of Nnabue like what was printed on his drivers' license. Nnabue stated that this was a DOL error. I also located Discover credit cards in his wallet under different names. One of the wallets recovered at the 20 mph speed sign contained Texas drivers' licenses with Nnabue's picture on them with the names of the people issued the Discover card. I seized the wallet and it's contents (MAD009) as evidence. When I questioned Nnabue about this he just said that the guy on the license looked kind of like him. I stopped questioning Nnabue at this time knowing that CID would be questioning him further concerning the situation. I confiscated Nnabue's Modavo watch and silver color chain necklace (MAD012) and Alexanders' Modavo watch gold color chain and two silver color chains (MAD013) during the booking process, since receipts showed they had just purchased them. Off. DeGabriele turned over to me a pair of tan work boots (MAD014) he located in the black gym bag along with a sprint cell phone and two Samsung cell phones (MAD011).

I had Off. DeGabriele photo copy all items and place them into plastic bags. I entered all items into evidence at Lynnwood P.D. I completed seizure notices on the money, jewelry and cellular telephones confiscated from both Nnabue and his accomplice who unidentified at this time.

**Sgt. Demetruk #412**